IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,            :

           Plaintiff,            :

       v.            :            Civil No.

$17,242.00 in U.S. CURRENCY,            :

          Defendant.            :

: : : : : :

## VERIFIED COMPLAINT FOR FORFEITURE

Plaintiff, the UNITED STATES OF AMERICA, by its attorneys, Rod Rosenstein, United States Attorney for the District of Maryland, and Stefan D. Cassella, Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1.      This is a civil forfeiture action against United States currency involved in violations of Trafficking in Contraband Cigarettes that is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## THE DEFENDANT *IN REM*

2.      The defendant property consists of $17,242.00 in United States currency (hereinafter, the "Defendant Property").

3.      The Defendant Property was seized on October 7, 2013, from Adel Ahmed Fadel ("Fadel") pursuant to a traffic stop and search of the 2008 Kia Spectra, New York registration NAADIR, that Fadel was driving in Worcester County, Maryland.  The Defendant Property

subsequently was placed in the custody of the United States Department of Homeland Security in the District of Maryland where it remains.

## JURISDICTION AND VENUE

4.        Plaintiff brings this action *in rem* in its own right to forfeit and condemn the Defendant Property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, over an action for forfeiture under 28 U.S.C. § 1355(a), and over this particular action under 18 U.S.C. § 981(a)(1)(C).

5.        This court has *in rem* jurisdiction over the Defendant Property under 28 U.S.C. § 1355(b). Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the Defendant Property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

6.        Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1) because the acts or omissions giving rise to forfeiture occurred in this district and pursuant to 28 U.S.C. § 1395 because the Defendant Property is located in this district.

## BASIS FOR FORFEITURE

7.        The Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because it is property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 2342 (knowingly ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes).

## FACTS

8.        The forfeiture is based upon, but not limited to, the evidence outlined in the attached Declaration of Kenneth W. Oland, Jr., Special Agent of Homeland Security Investigations, which is incorporated herein by reference.

**WHEREFORE**, THE Plaintiff prays as follows:

1. That any person or persons having any interest therein be cited to appear herein and answer the Complaint;

2. That a Warrant of Arrest *in rem* issue to the United States Marshal commanding the arrest of the Defendant Property;

3. That Judgment of Forfeiture be decreed against the Defendant Property;

4. That upon Final Decree of Forfeiture, the United States Marshal dispose of the Defendant Property according to law;

5. That the Plaintiff have such other and further relief as the case may require.

Dated: April 16 , 2014

Respectfully submitted,

Rod J. Rosenstein
UNITED STATES ATTORNEY
District of Maryland

Stefan D. Cassella
Assistant United States Attorney
36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201
Tel: (410) 209-4800

## DECLARATION

This affidavit is submitted in support of a complaint for forfeiture of $17,242.00 in United States currency seized from Adel Ahmed Fadel on October 7, 2013.

I, Kenneth W. Oland, Jr., Special Agent of Homeland Security Investigations, submit that there are sufficient facts to support a reasonable belief that the $17,242.00 in United States currency seized on October 7, 2013, constitutes property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 2342 (knowingly ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes). Thus, the $17,242.00 in United States currency seized on October 7, 2013, is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

a. On October 7, 2013, Corporal Mumford of the Worcester County Sheriff's Office observed a 2008 Kia Spectra bearing New York registration NAADIR ("the vehicle"), in the area of Worcester Highway (U.S. Route 113) and Basket Switch Road, Newark, Worcester County, Maryland, weaving from right to left within the travel portion of the roadway, and nearly crossing the centerline at least two times. Corporal Mumford also observed the vehicle constantly braking while traveling southbound.

b. Corporal Mumford conducted a traffic stop of the vehicle and made contact with the driver of the vehicle, Adel Ahmed Fadel ("Fadel").

c. Fadel consented to a search of his vehicle.

d. The search of the vehicle revealed a large empty suitcase in the trunk of the vehicle.

1

e. The search also revealed a black plastic bag wedged under the driver's seat. The black plastic bag contained an amount of United States currency.

f. Corporal Mumford believed that Fadel was currently involved in criminal activity. Corporal Mumford contacted Corporal Wells of the Worcester County Criminal Enforcement Team to respond to the scene of the traffic stop and assist him.

g. Corporal Wells responded to the scene of the traffic stop. Corporal Mumford briefed Corporal Wells as to what he discovered during his search of the vehicle. Corporal Wells opened the suitcase and noted that it was completely empty.

h. Corporal Wells is familiar with the ever increasing problem of bulk cigarette smuggling from southern states to northern states, more particularly from Virginia to New York, New Jersey and Pennsylvania.

i. Corporal Wells knows that there is a substantial difference between the cigarette tax rates in Virginia and the cigarette tax rates of New York, New Jersey and Pennsylvania. The purchasing of cigarettes in Virginia, then smuggling the cigarettes to northern states and avoiding the higher tax rates makes cigarette smuggling extremely profitable to those who smuggle cigarettes from Virginia to New York, New Jersey and Pennsylvania.

j. The large suitcase was the only item in the trunk of the vehicle.

k. The empty suitcase in the trunk of Fadel's vehicle was highly suspicious to Corporal Wells. Corporal Wells knows, based upon his training, knowledge and experience, that individuals who smuggle unstamped cigarettes utilize large suitcases to conceal the cigarettes that they smuggle. Corporal Wells knows that cigarettes smugglers load as many cartons of unstamped cigarettes into their vehicle as possible. Cigarette

smugglers do this by having their trunk completely empty, to the point where they will often remove the spare tire from their vehicle to be able to fit even more cigarettes into their trunk. Once the cigarette smugglers have filled the trunk of their vehicle with cartons of cigarettes, they will then utilize large suitcases and fill them with cartons of cigarettes and place them in the rear passenger area of their vehicle.

l.  Corporal Wells knows that the Eastern Shore of Virginia is a "hot spot" for cigarette smugglers to obtain bulk amounts of Virginia tax stamped cigarettes to smuggle back to northern states. Corporal Wells knows, based upon his training, knowledge and experience, that several roadways that travel through Worcester County, Maryland, more specifically Worcester Highway (U.S. Route 113) and Ocean Highway (Route 13) are known as cigarette smuggling corridors utilized by cigarette smugglers when transporting cigarettes to northern states. Corporal Wells has made and assisted in numerous cigarette smuggling arrests on these two highways that travel through Worcester County, Maryland. Corporal Wells has also seized and assisted with the seizure of large amounts of United States currency during traffic stops on these two highways, and such currency was associated with bulk unstamped cigarette smuggling.

m.  The black plastic bag recovered from Fadel's vehicle contained seven (7) bundles of United States currency held together with rubber bands. Each of these bundles of United States currency was later found to contain $2,000.00 each.  Corporal Mumford also located $3,242.00 in US Currency from FADEL's pants pocket.  The total US Currency seized from FADEL and his vehicle was $17,242.00.

n. Based upon Corporal Wells' training, knowledge and experience, the manner in which this currency was found and the manner in which it was separated and rubber banded together is consistent with prior currency seizures associated with bulk cigarette smuggling that Corporal Wells has investigated.

o. The GPS unit in Fadel's vehicle was programmed to the following address: Lankford Highway, Temperanceville, Virginia.

p. Corporal Wells knows that this address is significant because the GPS unit was not programmed to provide Fadel with directions to a definitive address as a final destination.

q. Fadel later said that he was traveling to a friends' house located in Temperanceville, Virginia.

r. Fadel was not able to provide the physical street address for his friend. Fadel did not know the street that his friend resided on.

s. Corporal Wells has observed this same type of GPS entry on GPS units during previous cigarette smuggling investigations he has conducted. Corporal Wells knows that these individuals commonly indicate to law enforcement that they are going to visit family and/or friends. However they commonly enter "Lankford Highway" along with one of the towns that Lankford Highway travels through in Accomac County, Virginia. Corporal Wells has also observed that cigarette smugglers will pick a random address along Lankford Highway and program it into their GPS unit. If Fadel was in fact traveling to visit his friend, Corporal Wells would expect to see Fadel's GPS unit programmed with an exact physical address of his friend, or for Fadel to at least know the street name that his friend lives on.

t.  Corporal Wells met with Fadel and asked Fadel why he was in possession of such a large amount of United States currency. Fadel told Corporal Wells that he removed the currency from his bank account to place the currency into his ATM machines.

u.  Corporal Wells asked Fadel where his ATM machines were located. Fadel said that his ATM machines were located in New York.

v.  Corporal Wells noted that Fadel lives in New York and that he was traveling from New York to Virginia. Corporal Wells was suspicious as to the reason for Fadel's travels with this large amount of currency when he said that the currency was for his ATM machines in New York but that he had just left New York to travel to Virginia. Corporal Wells asked Fadel why he was traveling to Virginia with the currency when he advised that he was going to deposit the currency in his ATMs in New York, but Fadel never provided Corporal Wells with a response to this question.

w.  Corporal Wells asked Fadel what the purpose of his travel was. Fadel said that he was going to visit some friends in Temperanceville, Virginia. Corporal Wells asked Fadel what the names of his friends were. Fadel hesitated and finally gave a name of "Lamis."

x.  Corporal Wells asked Fadel how long he was staying with his friends in Virginia. Fadel said that he was going to stay with his friends in Virginia for three days.

y.  Earlier Fadel told Corporal Mumford that he was "going to visit his cousin in Virginia."

z.  Corporal Wells asked Fadel where in Virginia his friends lived. Fadel was unable to provide an address or the name of the street his friends lived on.

aa. Fadel's vehicle contained no clothing or personal hygiene items in the vehicle. Corporal Wells asked Fadel where his extra clothing and personal hygiene items were. Fadel was unable to provide a response as to why he did not have any change of clothing or other personal items for his three day stay.

bb. Corporal Wells noted that although the outside temperature was in the upper 60's, Fadel had a considerable amount of perspiration beading on his forehead as Corporal Wells was speaking with him.

cc. Based upon the totality of the circumstances, Corporal Wells does not believe that Fadel was traveling to Temperanceville, Virginia to visit a friend for three days, but rather that Fadel was traveling to Temperanceville, Virginia to acquire a large amount of Virginia tax stamped cigarettes and bring them back to New York to distribute.

dd. Corporal Wells asked Fadel for his consent to view the content of his cellular phones and Fadel advised Corporal Wells that he could view the contents of his cellular phones.

ee. On Fadel's maroon and gray in color LG cellular phone, Corporal Wells located a text message sent to Fadel on August 14, 2013, which stated: "9280-9338 Lankford Hwy, Temperanceville, Virginia 23442." The cellular phone indicated that the message was sent from a contact listed in Fadel's cellular phone as "Abdulla Cigara" with a telephone number of 718-213-6887.

ff. Corporal Wells also located a text message sent from Fadel's cellular phone to 718-213-6887 that was documented on Fadel's cellular phone as being sent on October 7, 2013, at 0754 hours. This message stated: "Am a get therd at 10.30."

6

gg. Corporal Wells later conducted a law enforcement database check of telephone number 718-213-6887. This check revealed that the name of Abdullah Qaza was associated with the 718-213-6887 telephone number. Corporal Wells then conducted a search of the name Abdullah Qaza and discovered that this name is linked to the address of 9298 Lankford Highway, Temperanceville, Virginia 23442. Corporal Wells conducted a search of the address of 9298 Lankford Highway, Temperanceville, Virginia, 23442 and discovered that the address is associated with a business entitled "Virginia Smokehouse Cigarette Outlet."

hh. Detective Trader was briefed on the above incident. Detective Trader and your affiant then responded to the address of 9298 Lankford Highway, Temperanceville, Virginia 23442, and located two businesses which shared a building with the address of 9298 Lankford Highway, Temperanceville, Virginia. One of those businesses had a sign outside the store indicating the store was a cigarette outlet and the other business was a beauty salon named "Kasual Kuts." Detective Trader and your affiant observed a 2006 Ford Van bearing Virginia registration WPP3794 backed up to the Cigarette Outlet building.

ii. Corporal Wells conducted a search of Virginia registration WPP3794 and discovered that the Ford Van was registered to a subject identified as Lamis M. Aqel, with an address listed as 9298 Lankford Highway, Temperanceville, Virginia (the same address as the Virginia Smokehouse Cigarette Outlet). Corporal Wells conducted a search through a law enforcement database and discovered that Lamis M. Aqel had a listed address of 5032 Main Street, Chincoteague, Virginia 23336. Corporal Wells conducted a search of a law enforcement database on the name Abdullah Qaza.

Corporal Wells also found that the name Abdullah Qaza that he had located previously was also linked to 9298 Lankford Highway, Temperanceville, Virginia. Corporal Wells noted that Abdullah Qaza had a listed date of birth as September 23, 1982. Corporal Wells conducted a search through the Virginia Department of Motor Vehicles and discovered that Abdullah Qaza listed his address as 5032 Main Street, Chincoteague, Virginia 23336 (the same listed address that the registered owner of the Van that was parked at the Virginia Smokehouse Cigarette Outlet).

jj. Based upon Corporal Wells' investigation and the discovery of the text messages sent to and from Fadel's cellular phone, Corporal Wells believes that Fadel was en route to Temperanceville, Virginia to obtain a large amount of Virginia tax stamped cigarettes and bring them back with him to New York to distribute.

kk. Corporal Wells authored a search and seizure warrant for the two cellular phones recovered from Fadel during the above traffic stop. On October 16, 2013, Corporal Wells met with the Honorable Judge Gerald V. Purnell, Judge of the District Court for Worcester County, Maryland, and Judge Purnell reviewed and signed the search warrant for the above cellular phones.

ll. Sergeant Passwaters conducted an electronic forensic examination of Fadel's white in color iPhone. An electronic report was developed as a result of this examination. Corporal Wells examined this electronic report and located the following communications between Fadel's iPhone and the contact listed in his phone as "Abdullah Cagara" with phone number 718-213-6887 (subject linked to the Virginia Smokehouse Cigarette Outlet):

    1. 9/17/2013 at 0952 hours
    2. 9/17/2013 at 1119 hours

8

3. 9/17/2013 at 1119 hours
4. 9/20/2013 at 1053 hours
5. 9/20/2013 at 1102 hours
6. 9/20/2013 at 1116 hours
7. 9/20/2013 at 1124 hours
8. 9/28/2013 at 0616 hours
9. 10/04/2013 at 1532 hours
10. 10/05/2013 at 1502 hours
11. 10/05/2013 at 2003 hours
12. 10/06/2013 at 1132 hours
13. 10/07/2013 at 0837 hours
14. 10/07/2013 at 0918 hours

mm.   Corporal Wells located the following text messages recorded on Fadel's iPhone

that Cpl. Wells believes are significant to this investigation:

1. From cellular phone contact "Mahmood 5th Ave" "347-756-9015" on October

9, 2013, at 1513 hours:

"Your money is ready come for it and bring me

1 American blue
1 marboro medium
1american orang
2    danhill red
2 paliment
2 new port small
2 new port long"

In the above text message, Corporal Wells believes, based on his knowledge,

training and experience, that the subject is asking Fadel for a variety of

cartons of cigarettes.

2. From cellular phone contact "504-669-9846" on October 15, 2013, at 1449

hours:

"This mohamed el mouritani you will pay my mony i swear you will pay me
Adil you dont know what im playing for you i have your address mother fucke
and i sweare you will pay"

9

In the above text message, Corporal Wells believes that, based on his knowledge, training and experience, the above subject is angry at Fadel for losing his money, and Corporal Wells further believes this money was a part of the United States currency that was seized from Fadel on October 7, 2013.

3. From cellular phone contact "504-669-9846" on October 15, 2013, at 1449 hours:

"This mohamed elmoritani i will never forgive u for my mony and allah"

4. From cellular phone contact "504-669-9846" on October 15, 2013, at 1451 hours:

"My mony 2000"

nn.   Corporal Wells conducted an electronic forensic examination of Fadel's maroon in color LG cellular phone. An electronic report was developed as a result of this examination. Corporal Wells examined this electronic report and located the following communications between Fadel's maroon LG cellular phone and the contact listed in his phone as "Abdullah Cigara" with phone number 718-213-6887 (subject linked to the Virginia Smokehouse Cigarette Outlet):

1. Incoming text message to Fadel's LG cellular phone from phone number 718-213-6887 on August 14, 2013, at 0407 hours:

"9280-9338 Lankford Hwy Temperanceville Virginia 23442 United States"

2. Outgoing text message from Fadel's LG cellular phone to phone number 718-213-6887 on October 7, 2013, at 0754 hours:

"Am a get therd at 10.30"

oo.    Fadel's maroon LG cellular phone contained a contact for phone number 718-213-6887 listed to Abdulla Cigara and Fadel's white in color iPhone had phone number 718-213-6887 listed to Abdulla Cagara in its contacts.

pp.    On October 16, 2013, Corporal Wells learned of the arrest of a subject identified as Said Al-Quaiti ("Al-Quaiti") by the Pocomoke City Police Department.

qq.    Al-Quaiti was in possession of $23,047.00 in United States currency and receipts for the purchase of large quantities of cigarettes at the time of his arrest.

rr.    Corporal Wells interviewed Al-Quaiti after advising Al-Quaiti of his Miranda rights.

ss.    During that interview, Al-Quaiti admitted that he was traveling to Virginia to purchase a large quantity of cigarettes from an individual identified as Abdullah.

tt.    Corporal Wells asked Al-Quaiti if he would provide Corporal Wells with "Abdullah's" phone number. Al-Quaiti said "sure." Corporal Wells obtained Al-Quaiti's cellular phone and gave it to Al-Quaiti. Al-Quaiti located a phone number in his cellular phone and gave the phone to Corporal Wells. Corporal Wells observed the following phone number: 718-213-6887.

uu.    Corporal Wells noted that this is the same phone number that Fadel was contacting on October 7, 2013, when he was found to be in the possession of the large amount of United States currency.

vv.    An outgoing text message from Fadel to a subject listed in Fadel's cellular phones as "Abdulla Cagara" and "Abdulla Cigara" with a phone number of 718-213-6887, said "Am a get therd at 10.30." This message was sent on October 7, 2013, at 0754 hours, approximately three (3) hours before Corporal Mumford stopped

Fadel and found him in the possession of a large amount of United States currency.

ww.   Corporal Wells showed Al-Quaiti a photograph of Fadel and asked Al-Quaiti if he recognized the person in the photograph.  Al-Quaiti said that he knew the person, but that he did not know the person's name.  Al-Quaiti said that the subject in the photograph (Fadel) is very involved with the distribution of Virginia cigarettes in New York.  Al-Quaiti said that the person (Fadel) owns several delis in New York and sells the Virginia cigarettes from these stores.

xx.   During the October 7, 2013, traffic stop, Fadel said that he owned a deli in New York City.

yy.   During the traffic stop, Fadel had several banking cards in his wallet which listed the following locations on the cards: Flatlands Grocery; Ralph Avenue Deli Corp.; Farmer's Blvd. Food Corp.; and Lafayette Express Deli.

I DECLARE UNDER PENALTY OF PERJURY PURSUANT TO TITLE 28 U.S.C. § 1746 THAT THE FACTS SUBMITTED BY THE WORCESTER COUNTY SHERIFF'S OFFICE, IN REFERENCE TO THE SEIZURE OF $17,242.00 IN UNITED STATES CURRENCY FROM ADEL AHMED FADEL ARE ACCURATE, TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

Kenneth W. Oland, Jr.
Special Agent
Homeland Security Investigations

## **VERIFICATION**

       I, Stefan D. Cassella, declare under penalty of perjury as provided by 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture is based on reports and information furnished to me by the Department of Homeland Security and that everything contained therein is true and correct to the best of my knowledge and belief.

Dated: April 16, 2014

                                        Stefan D. Cassella
                                        Assistant United States Attorney

**MEMORANDUM**

DATE:            April 16, 2014

TO:              Paula M. Rigby / Julie Bedenbaugh
                 Department of Homeland Security
                 U.S. Customs & Border Protection

FROM:            Jennifer Stubbs
                 Paralegal Specialist
                 U.S. Attorney's Office - District of Maryland

RE:              **U.S. v. $17,242.00 in U.S. Currency**

                 Civil Action No.

                 **CATS  ID No.  14-CBP-000069**
                 **Agency Case No.  2014-1303-000061-01**

The United States has filed a forfeiture action against **$17,242.00 in U.S. Currency.**   A copy of the Complaint for Forfeiture is attached.

Notice of this seizure will be published at www.forfeiture.gov pursuant to Rule G of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims.

Thank you.

Attachment

## Department of Homeland Security
*Federal Law Enforcement Agencies*
## PROCESS RECEIPT AND RETURN

| PLAINTIFF<br>UNITED STATES OF AMERICA | COURT CASE NUMBER |
|---|---|
| DEFENDANT<br>**$17,242.00 in U.S. Currency** | TYPE OF PROCESS<br>Verified Complaint in Rem |

| | | |
|---|---|---|
| **SERVE AT** | Name Of Individual, Company, Corporation, Etc. to Serve or Description of Property to Seize<br>**2014-1303-000061-01 / 14-CBP-000069** | |
| | Address (Street or RFD / Apt. # / City, State, and Zip Code) | |

| Send NOTICE OF SERVICE  copy to Requester:<br><br>Jennifer Stubbs/Paralegal<br>U.S. Attorney's Office<br>36 S. Charles Street, 4th floor<br>Baltimore, Maryland  21201 | Number Of Process To Be<br>Served In This Case. | |
|---|---|---|
| | Number Of Parties To Be<br>Served In This Case. | |
| | Check Box If Service Is On USA | |

SPECIAL INSTRUCTIONS or OTHER INFORMATION TO ASSIST IN EXPEDITING SERVICE (includes Business and Alternate Addresses, Phone Numbers, and Estimated Availability times.)

Arrest property.  Fill in the date of arrest in this process receipt and return our copy.

| Signature of Attorney or other Originator requesting service on behalf  of  [ X ]Plaintiff<br>[  ]Defendant | Telephone No.<br>(410) 209-4800 | Date<br>Apr 16, 2014 |
|---|---|---|
| SIGNATURE OF PERSON ACCEPTING PROCESS: | | Date |

### SPACE BELOW FOR USE OF TREASURY LAW ENFORCEMENT AGENCY

| I acknowledge receipt for the Total #<br>of Process Indicated. | District of Origin<br>No. | District to Serve<br>No. | SIGNATURE OF AUTHORIZED TREASURY AGENCY OFFICER: | Date |
|---|---|---|---|---|

I hereby Certify and Return That I [  ] PERSONALLY SERVED, [  ] HAVE LEGAL EVIDENCE OF SERVICE, [  ] HAVE EXECUTED AS SHOWN IN "REMARKS", the Process Described on the Individual, Company, Corporation, Etc., At The Address Shown Above or at the Address Inserted Below.

[  ] I HEREBY CERTIFY AND RETURN THAT I AM UNABLE TO LOCATE THE INDIVIDUAL, COMPANY, CORPORATION, ETC. NAMED ABOVE.

| NAME & TITLE of Individual Served If not shown above: | [  ] A Person of suitable age and discretion then residing in the                                  defendant's usual place of abode. | | |
|---|---|---|---|
| ADDRESS: (Complete only if different than shown above.) | Date of Service | Time of  Service | [   ] AM<br>[   ] PM |
| | Signature, Title and Treasury Agency | | |

REMARKS:

**TD F 90-22.48 (6/96)**

*Make (5) copies after form is signed.  SEND ORIGINAL + 4 COPIES to TREASURY AGENCY.  Retain Copy #5 for your file.*